2009 UT App 284

**ORCHARD PARK CARE CENTER, Rock Canyon Rehab and Nursing, and Trinity Mission Health, Petitioners,**

v.

**DEPARTMENT OF HEALTH, DIVISION OF HEALTH SYSTEMS IMPROVEMENT; and Pointe Meadows, Respondents.**

No. 20081023–CA.

Court of Appeals of Utah.

Oct. 8, 2009.

---

Mark L. Callister and Stephen F. Mecham, Salt Lake City, for Petitioners.

Annina M. Mitchell, Salt Lake City, for Respondent Department of Health.

Blaine J. Benard and J. Andrew Sjoblom, Salt Lake City, for Respondent Pointe Meadows.

Before GREENWOOD, P.J., DAVIS and McHUGH, JJ.

## OPINION

DAVIS, Judge:

¶ 1 This case arises from the Utah Department of Health, Division of Health Systems Improvement's (the Department) issuance of a license to Pointe Meadows (Respondent) to build a Medicare-only skilled nursing facility in Utah County. Orchard Park Care Center, Rock Canyon Rehab and Nursing, and Trinity Mission Health (Petitioners) seek review of the Department's order denying their motion to intervene in the licensing proceedings. We reverse the Department's denial of Petitioners' petition to intervene and remand for further proceedings.

## BACKGROUND

¶ 2 In 2006, Cory Robinson, Gary Burraston, and other individuals (the partners) began working on the development of a Medicare-only skilled nursing facility, which was to be located in Utah County. After completing some of the preliminary planning, including a feasibility study,[1] Respondent informed the Department that it planned to apply for a license for the facility. A staff member at the Department told Respondent that it should not purchase land in Utah County or submit a Notice of Intent or a Request for Agency Action/Licensing Application[2] because the Utah Legislature was

---

1. Although the feasibility study is dated October 2007, it was not filed or publicly available until after February 22, 2008.

2. A "Notice of Intent" is a form provided by the Department for individuals who are interested in, but have not yet fully committed to, building a healthcare facility and are seeking a license for

considering a moratorium on Medicare-only skilled nursing facilities during the 2007 legislative session and that the moratorium could be retroactive to August 2006. In a subsequent conversation with a different staff member at the Department, Respondent learned that the moratorium was expected to take effect on March 31, 2007. In January 2007, Respondent purchased land for the facility in Lehi, Utah. On February 28, 2007, Respondent submitted a Notice of Intent to the Department. Subsequently, on March 29, 2007, Respondent filed a signed Request for Agency Action/Licensing Application.

¶ 3 In the meantime, during the 2007 legislative session, the Utah Legislature enacted a moratorium on new licenses for Medicare-only facilities, which was codified at Utah Code section 26–21–23 (the moratorium statute). *See* Utah Code Ann. § 26–21–23 (Supp. 2009). The moratorium statute contained an exception, however, for those facilities that had "filed an *application* with the [D]epartment and paid all applicable fees to the [D]epartment *on or before February 28, 2007.*" *Id.* § 26–21–23(5)(a) (emphasis added). Approximately three months later, on May 29, 2007, the Department amended Utah Administrative Code rule 432–2–6 to state that "[t]he requirements contained in Utah Code section 26–21–23(5)(a) shall be met if a nursing care facility filed a *notice of intent or application* with the Department . . . prior to March 1, 2007." Utah Admin. Code R432–2–6(8) (emphasis added). The net effect of this administrative rule change was that Respondent's Notice of Intent, filed on February 28, 2007, was deemed to have satisfied the cutoff date for the exemption contained in the moratorium statute.

¶ 4 After it filed its Notice of Intent, Respondent learned that its Lehi property was to become the subject of an eminent domain proceeding.[3] Respondent reached a settlement with the condemning authority and sought permission from the Department to transfer its existing Notice of Intent and Request for Agency Action/License Application to a different property in Orem, Utah. In November 2007, Allan Elkins, the Department's Director of Health Facilities Licensing, notified Respondent via email that "[d]ue to the unusual circumstances of [the] case,"[4] Respondent would be allowed to "transfer [the original] application from the Lehi location to the Orem location." Accordingly, in early January 2008, the partners broke ground on the Pointe Meadows facility in its new Orem location.[5]

¶ 5 Sometime after February 22, 2008, Respondent's feasibility study was released publicly, putting Petitioners on notice of Respondent's licensing proceedings.[6] Subsequently, on March 25, 2008, about one year after Respondent filed its Request for Agency Action/Licensing Application with the Department-but only one month after Petitioners received notice of the proceedings and nearly a full nine months before any license was issued-Petitioners filed with the Department a petition to intervene in Respondent's licensing proceedings. Petitioners cited Respondent's failure to comply with the moratorium statute as the basis for their petition. On June 5, 2008, the Department denied the petition to intervene in a letter from Elkins. On June 24, 2008, Petitioners filed a request for reconsideration of their petition to intervene. On August 13, 2008, Elkins granted Petitioners' request for reconsideration and referred the matter to an independent hear-

that purpose. A "Request for Agency Action/License Application" is also a form provided by the Department for individuals who are seeking a license for a healthcare facility, but the form requires more detailed information, including the ownership and management of the proposed facility, as well as the stock or other equity ownership of each officer, director, member, or partner of the facility.

3. The Lehi property is located in a designated freeway corridor.

4. The unusual circumstances to which Elkins referred was the threat of eminent domain against the Lehi property.

5. The Department allowed an amended application for the Orem location to be submitted on or about May 21, 2008.

6. Respondent's counsel conceded at oral argument that this was the first notice Petitioners received concerning the Pointe Meadows facility.

ing officer.[7] In September 2008, an Administrative Law Judge (the ALJ) scheduled a prehearing conference to be held on October 21, 2008. Notwithstanding a letter to the parties listing several matters for consideration,[8] the ALJ limited the October 21 conference to setting a briefing schedule only on the issue of intervention and did not schedule a hearing on any other issues in the case. Accordingly, the parties briefed only the issue of whether Petitioners were entitled to intervene in Respondent's licensing proceeding.

¶ 6 On December 3, 2008, the ALJ issued a Recommended Decision to Affirm Denial of Intervention, stating that the Petitioners were

> not entitled to intervene in the licensing of Pointe Meadows nursing facility because .... [a]t this late date, an administrative hearing that does not directly address the potential licensee, but an intervenor is unnecessary, contrary to the [Department]'s precedent, and not in the best interest of the public or the Medicaid program.

The next day, December 4, 2008, the ALJ's Recommended Decision was adopted in its entirety in a Final Agency Order by Dr. Marc Babitz, the Department's Director of the Division of Health Systems Improvement.

¶ 7 On December 15, 2008, Petitioners filed a petition for review with this court and also petitioned the Department to stay the December 4, 2008 order. That same day, the Department verbally informed Respondent that it would receive its provisional license. Three days later, on December 18, 2008, the Department denied Petitioner's petition for stay and granted Respondent's provisional license, which permitted it to begin accepting

residents.[9] On January 12, 2009, Petitioners moved this court to stay the Department's December 4, 2008 order. While that motion was pending with this court, the Department issued Respondent's standard license. On February 23, 2009, this court denied Petitioners' motion to stay.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 8 Petitioners contend, among other things, that the Department erred in denying their petition to intervene in Respondent's licensing proceedings. "The Utah Administrative Procedures Act, (the Act), governs our review of a state administrative agency's decision. Where, as in this case, a party is seeking review of a formal agency action,[10] Utah Code section [63G–4–403] supplies the applicable standards of review." *Utah Chapter of the Sierra Club v. Utah Air Quality Bd.*, 2006 UT 74, ¶ 9, 148 P.3d 960 (citation omitted). Pursuant to Utah Code section 63G–4–403(4), "[t]he appellate court shall grant relief only if, on the basis of the agency's record, it determines that a person seeking judicial review has been substantially prejudiced [because] ... the agency has not decided all of the issues requiring resolution." Utah Code Ann. § 63G–4–403(4) (2008). Whether the Department "decided all of the issues requiring resolution," *id.*, is a question of law reviewed for correctness. *See EAGALA, Inc. v. Department of Workforce Servs.*, 2007 UT App 43, ¶ 7, 157 P.3d 334.

## ANALYSIS

I. Formal Adjudicative Proceedings Subject to the Right to Petition to Intervene

¶ 9 Respondent argues that the licensing proceeding is not a formal adjudicative pro-

---

7. At this stage, construction of the Pointe Meadows facility had progressed to the point where approximately half of the money budgeted for the project had been spent.

8. The ALJ's letter stated that the matters to be discussed at the prehearing conference included the following:

1. The issues of the case.
2. Whether you wish to amend the pleadings (the petitioner's hearing request or the agency's denial notice).

3. To arrange for the exchange of proposed exhibits or testimony to be presented at the formal hearing.
4. Applicable law and policy *for each issue.*
5. A time, date, and place for the formal hearing and procedures to be followed.

9. Pointe Meadows accepted its first resident on December 19, 2008.

10. Respondent's argument that the licensing proceeding is not a formal adjudicative proceeding subject to intervention is addressed in Part I of our analysis.

ceeding subject to intervention; rather, Respondent contends that pursuant to administrative rules, any licensing decision is made as an "initial agency determination" that requires Petitioners to exhaust other administrative remedies before seeking review with this court. Petitioners, on the other hand, argue that the licensing decision is a formal adjudicative proceeding subject to intervention. The determination of whether the final agency order appealed from results from formal adjudicative proceedings directly affects this court's subject matter jurisdiction over the petition for review. *See* Utah Code Ann. § 78A–4–103(2)(a) (Supp.2009) (stating that this court only has subject matter jurisdiction over appeals from "the final orders . . . resulting from *formal adjudicative proceedings* of state agencies" (emphasis added)). Accordingly, it is a threshold issue that we are required to address before discussing any other issues raised.

■ ¶ 10 Under the Act, "[a]ny person not a party may file a . . . petition to intervene in a formal adjudicative proceeding." Utah Code Ann. § 63G–4–207(1) (2008). Moreover, section 63G–4–201 provides that "all adjudicative proceedings shall be commenced by . . . a request for agency action, if proceedings are commenced by persons other than the agency." *Id.* § 63G–4–201(1). It is undisputed in this case that on March 29, 2007, Respondent filed "a Request for Agency Action/License Application with [the Department] on a form furnished by the Department." Utah Admin. Code R432–2–6(1). At the bottom of the form, there is a statement assuring that the signor, in this case Burraston, "understand[s] th[e] request constitutes a Request for Agency Action as specified in Utah Code [section 63G–4–201(1)(b) ] and serves as the formal document upon which a licensing decision will be based." Clearly, when Respondent filed the Request for Agency Action/License Application with the Department, the filing commenced adjudicative proceedings pursuant to Utah Code section 63G–4–201, *see* Utah Code Ann. § 63G–4–201(1).

¶ 11 Furthermore, Utah Administrative Code rule 432–30–3(1) provides that "[a]ll adjudicative proceedings under [Utah Code sections 26–21–1 to –24], Health Care Facility Licensing and Inspection Act, and under R432, Health Facility Licensing Rules, are *formal adjudicative proceedings.*" Utah Admin. Code R432–30–3(1) (emphasis added). Respondent's licensing proceeding was conducted under Utah Code sections 26–21–1 to–24 and Utah Administrative Code rule 432; accordingly, the licensing proceeding was a *formal* adjudicative proceeding to which the right to petition for intervention attached.

II. The Department Erred, as a Matter of Law, in Failing to Address Issues Requiring Resolution

■ ¶ 12 Utah Code section 63G–4–403(4) provides that "[t]he appellate court shall grant relief only if . . . it determines that a person seeking judicial review has been substantially prejudiced [because] . . . the [Department] has not decided all of the issues requiring resolution." Utah Code Ann. § 63G–4–403(4). We conclude that the Department failed to address several issues requiring resolution in connection with the petition to intervene and that this failure substantially prejudiced Petitioners and resulted in an inadequate record. Those issues include, but are not limited to, the following: (1) whether Petitioners had standing to petition to intervene, including whether the Petitioners are "persons" under Utah Code section 63G–4–207(1), *see id.* § 63G–4–207(1) ("Any *person* not a party may file a . . . petition to intervene[.]" (emphasis added)), and the applicability, if any, of rule 17(a) of the Utah Rules of Civil Procedure, *see* Utah R. Civ. P. 17(a) (discussing real parties in interest); (2) whether Respondent's Notice of Intent satisfied the moratorium statute's requirement that an "application" be filed prior to February 28, 2007; (3) whether Respondent's Request for Agency Action/License Application filed on March 29, 2007, satisfied the application deadline contained in the moratorium statute; (4) the effect of the transfer of the original application for the Lehi location to the Orem location in November 2007, including the effect, if any, of the condemnation proceeding and whether the transfer constituted a new application that violated the moratorium statute's February 28, 2007

deadline; (5) whether the May 29, 2007 administrative rule change was an improper retroactive application of the law or an improper modification of the plain language of the moratorium statute; (6) what effect, if any, the lack of notice of the licensing proceeding until February 2008 had on the issue of when the petition to intervene should have first been entertained by the Department;[11] and (7) the applicable time and fact context relevant to the intervention proceeding on remand.

## CONCLUSION

¶ 13 We conclude that the licensing proceeding was a formal adjudicative proceeding subject to the statutory right to petition to intervene. We also determine that, as a matter of law, the Department erred in failing to address issues that required resolution and, as a result, failed to develop an adequate record and prejudiced Petitioners. Accordingly, we reverse the Department's denial of Petitioner's petition to intervene and remand for further proceedings consistent with this decision.

¶ 14 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge, and CAROLYN B. McHUGH, Judge.

---

11. The fact that notice of the licensing proceeding occurred nearly a year after Respondent's Request for Agency Action/License Application is problematic. By the time the feasibility study was released in February 2008, Respondent had expended considerable time and resources on the Pointe Meadows facility. Assuming that Respondent had fully complied with any obligation it had to provide notice, it was proceeding appropriately, apparently unaware that any interested parties would have an objection to the licensing of the facility. On the other hand, had Petitioners had notice of Respondent's request for a Medicare-only license when Respondent filed its Notice of Intent and Request for Agency Action/License Application in early 2007, Petitioners could have petitioned to intervene in the licensing proceedings *then*.