2013 UT App 156

# THE UTAH COURT OF APPEALS

PENTSKIFF INTERPRETING SERVICES,
Petitioner,
*v.*
DEPARTMENT OF HEALTH, DIVISION OF MEDICAID
AND HEALTH FINANCING OFFICE OF FORMAL HEARINGS,
Respondent.

Memorandum Decision
No. 20120064-CA
Filed June 20, 2013

Original Proceeding in this Court

Lonnie Eliason, Attorney for Petitioner
John E. Swallow and Brent A. Burnett, Attorneys
for Respondent

JUDGE MICHELE M. CHRISTIANSEN authored this Memorandum
Decision, in which JUDGES GREGORY K. ORME and
J. FREDERIC VOROS JR. concurred.

CHRISTIANSEN, Judge:

¶1      Pentskiff Interpreting Services (Pentskiff) seeks judicial review of a decision by the Utah Department of Health, Division of Medicaid and Health Financing Office of Formal Hearings (the Division) denying Pentskiff's request for a hearing due to a lack of jurisdiction. We decline to disturb the Division's decision.

¶2      Pentskiff subcontracted with Healthy U Managed Health Plan (Healthy U) to provide interpretation services for Healthy U's non-English speaking Medicaid clients. Healthy U is a Utah Medicaid managed care organization, which is defined as "a health maintenance organization or prepaid mental health plan that contracts with [the Division] to provide medical or mental health

services to medical assistance recipients." *See* Utah Admin. Code R410-14-2(2)(e). Pentskiff alleged that Healthy U has not paid, or has not paid in full, eighty-three claims for interpretation services provided by Pentskiff. To resolve this dispute, Pentskiff filed a hearing request with the Division on December 21, 2011. On January 5, 2012, the Division, on the recommendation of an administrative law judge, denied Pentskiff's hearing request for lack of jurisdiction. Pentskiff petitioned for judicial review without seeking reconsideration from the Division as permitted under Utah Code section 63G-4-302(1)(b).

¶3    Pentskiff challenges the Division's decision, claiming it misapplied the relevant law and the Division's own administrative rules in determining that it lacked jurisdiction to hear Pentskiff's claims. "The issue of whether an agency has jurisdiction is a question of law, which we review for correctness." *Darvish v. Labor Comm'n Appeals Bd.*, 2012 UT App 68, ¶ 16, 273 P.3d 953 (citation and internal quotation marks omitted). Pentskiff also argues that the Division inconsistently interpreted and applied its amended rules in a way that substantially prejudiced Pentskiff. "Claims that an agency decision is contrary to the agency's prior practice are . . . reviewed to determine if an inconsistency is justified by a fair and rational basis." *Benson v. Peace Officer Standards & Training Council*, 2011 UT App 220, ¶ 11, 261 P.3d 643 (omission in original) (citation and internal quotation marks omitted).

¶4    Federal law and regulations require that a state fair-hearing process be available for Medicaid enrollees whose claims for assistance are denied or not promptly acted upon. *See* 42 U.S.C. § 1396a(a) (2006) ("A State plan for medical assistance must . . . provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness . . . ."); *see also* 42 C.F.R. § 438.400(a)(1) (2012) (requiring "that a State plan provide an opportunity for a fair hearing to any person whose claim for assistance is denied or not acted upon promptly"). Additionally, federal regulation requires

"Medicaid managed care organizations to establish internal grievance procedures under which Medicaid enrollees, or providers acting on their behalf, may challenge the denial of coverage of, or payment for, medical assistance." 42 C.F.R. § 438.400(a)(3). In order for providers and their subcontractors to access the fair hearing process and grievance procedures, they must be "acting on behalf of the enrollee and with the enrollee's written consent." *Id.* § 438.402(b)(1)(ii).

¶5     The Division is responsible for "implementing, organizing, and maintaining [Utah's] Medicaid program." Utah Code Ann. § 26-18-2.1 (LexisNexis 2007). Consistent with the federal laws and regulations cited above, the Utah Administrative Code provides a fair-hearing process to Medicaid enrollees and their providers. *See* Utah Admin. Code R410-14-3, -4 (LexisNexis 2012).[1] In order for a managed care provider to access the fair-hearing process, it must be "acting solely on behalf of the client [or Medicaid enrollee]." *Id.* R410-14-3(2)(i).[2] Otherwise, the provider "has no right to a hearing with [the Division]." *Id.* Also, the Division "may not grant a

_____

1. Where it differs from the version currently in effect, we cite the version of the administrative code in effect at the time Pentskiff filed its hearing request with the Division on December 21, 2011. This version went into effect on April 25, 2011. *See* Utah Admin. Code R410-14-2 to -4 (LexisNexis 2012). On April 27, 2012, and again on September 27, 2012, these rules were amended in part. *See id.* R410-14-2 to -4 (2013). Even though the subsequent amendments do not apply to this case, the variation in the rules are noted when relevant.

2. Though in effect at the time of the Division's decision on January 5, 2012, this provision was deleted from the rule with subsequent amendments. *See* Utah Admin. Code R410-14-3(2)(i) (LexisNexis 2013). The current rule still requires providers who wish to access the fair-hearing process to "act[] on [an] enrollee's behalf" and allows access only for a "challenge [to] the denial of payment for medical assistance." *See id.* R410-14-3(2)(d).

hearing to a managed care provider to dispute the terms of a contract or the payment of a claim." *Id.* R410-14-4(5).[3]

¶6    The Division construed these federal and state laws and regulations to mean that "providers [like Pentskiff] under contract with managed care organizations who are not acting solely on behalf of the client and [who] do not have written consent from the client to act on their behalf," are not entitled to a hearing before the Division. The Division also noted, "This dispute is about payment, or non-payment, of Pentskiff's claims by Healthy U. It falls directly within the language of the rule, and [the Division] is therefore prohibited from granting [Pentskiff] a hearing." Accordingly, the Division ruled that Pentskiff "is not entitled to a hearing from [the Division] to dispute the non-payment or under payment of its claims against Healthy U."

¶7    We determine the Division's interpretation of the relevant law and rules with respect to its jurisdiction is correct. *See Darvish*, 2012 UT App 68, ¶ 16. In requesting a hearing before the Division, Pentskiff was not acting solely on behalf of a Medicaid enrollee and with that enrollee's written consent. Rather, Pentskiff was seeking payment for interpretation services it provided to Healthy U. The fair-hearing process is open to enrollees who are "adversely affected by any action or inaction" of the Division, *see* Utah Admin. Code R410-14-2(2)(b) (LexisNexis 2012), resulting in a "denial of payment for medical assistance," *see id.* R410-14-3(2)(d). Here, there is no claim by Pentskiff that the Division denied payment for an enrollee's medical assistance. Pentskiff's intent in requesting a hearing before the Division was to resolve its own dispute with

---

3. The current version of the rule reads, "[The Division] may not grant a hearing to a managed care provider to dispute the terms of a contract. This provision also applies to terms in a contract for rates of reimbursement." *See* Utah Admin. Code R410-14-4(5) (LexisNexis 2013).

Healthy U. Because Pentskiff was not acting exclusively on behalf of an enrollee, it is not entitled to a hearing before the Division.[4]

¶8     Furthermore, Pentskiff's claims against Healthy U arise from a contractual dispute, which is subject matter outside the Division's jurisdiction. *See id.* R410-14-4(5) (stating that the Division "may not grant a hearing to a managed care provider to dispute the terms of a contract or the payment of a claim"). Even though Pentskiff claims that Healthy U's eighty-three denials of payment do not stem from problems with its contract, it nevertheless argues that the Division "needs to look into the essence of every case with the payment denial, and apply the contract between Healthy U and Pentskiff." Pentskiff alleges that Healthy U denied payment as a result of "hidden policies of Healthy U" and that therefore "the requirement to follow some policies which are not clearly specified in the contract is a legal nonsense." Thus, despite Pentskiff's insistence that its claims do not stem from problems with its contract with Healthy U, the facts as alleged indicate that a contractual dispute is exactly the problem. Pentskiff does not claim that the Division or Healthy U committed any wrongdoing in connection with providing services to a Medicaid enrollee.

---

4. Pentskiff argues that the Division's website and the Utah Medicaid Provider Manual conflict with the Division's decision in this case. Pentskiff contends that these resources grant providers  the right to a hearing before the Division. *See Managed Care Plans*, Utah Department of Health, http://www.health.utah.gov/medicaid/provhtml/managed_care.htm (last visited June 14, 2013); Division of Medicaid and Health Financing, Utah Medicaid Provider Manual (2012). To the extent they are contrary to applicable law, these resources are of no force or effect. *See* Utah Code Ann. § 26-18-3(2) (LexisNexis Supp. 2012) ("The department shall implement the Medicaid program through administrative rules in conformity with this chapter, Title 63G, Chapter 3, Utah Administrative Rulemaking Act, the requirements of Title XIX, and applicable federal regulations.").

Therefore, because Pentskiff was acting solely on its own behalf in order to resolve a contract issue with Healthy U, we conclude that the Division correctly determined that it was precluded from exercising jurisdiction over Pentskiff's claim.[5]

¶9     The Division acknowledges that it previously allowed managed care providers and their subcontractors, including Pentskiff, to use the fair-hearing process to litigate contract and payment claims. However, the Division discontinued this practice following a change to its rules on April 25, 2011. Pentskiff argues that it is entitled to relief because the Division's application of its amended rules to this case has resulted in substantial prejudice to Pentskiff. *See* Utah Code Ann. § 63G-4-403(4)(h)(iii) (LexisNexis 2011) (providing that an appellate court may grant relief to a party that is substantially prejudiced by an agency action which is "contrary to the agency's prior practice, unless the agency justifies the inconsistency by giving facts and reasons that demonstrate a

---

5. Utah Administrative Code rule 410-14-3 grants the right to a hearing only to "aggrieved person[s]." *See* Utah Admin. Code R410-14-3(1) (LexisNexis 2012). "Aggrieved person" is defined as "any recipient or *provider* who is adversely affected by any action or inaction of the [Division] . . . or any managed health care plan." *See id.* R410-14-2(2)(b) (emphasis added). A provider is an organization that "has entered into a written contract with the Medicaid program." *See id.* R414-1-2(22). The Division argues that Pentskiff is not a provider because it has entered into a written contract only with Healthy U and not with the Medicaid program. Because Pentskiff is not a provider, the Division argues, it is not an "aggrieved person" and therefore not entitled to a hearing. To the contrary, Pentskiff claims that it does have a direct contract both with the State of Utah and with the Medicaid program in particular, and is therefore a provider. Regardless of how we might resolve Pentskiff's status as a provider, the Division would still lack jurisdiction to hear Pentskiff's claims for the reasons explained above.

fair and rational basis for the inconsistency"). The burden of proving a prima facie case of substantial prejudice by a preponderance of the evidence is on the party seeking judicial review. *See Benson v. Peace Officer Standards & Training Council*, 2011 UT App 220, ¶ 24, 261 P.3d 643.

¶10    Other than the denial of its hearing request, Pentskiff has not identified precisely how it was substantially prejudiced by the Division's departure from its prior practice. Other forums are available to Pentskiff in which it can fully litigate its dispute with Healthy U. Indeed, the Division even advised Pentskiff to take "its claims to the applicable small claims or district court." Nevertheless, even if Pentskiff were to demonstrate substantial prejudice, we conclude that the change in the Division's practice was fair and rational. The Division changed its practice to conform to a change in its administrative rules. The rule change reflects a policy shift in how the Division is to administer Medicaid hearings consistent with state and federal law. The Division notes that at the heart of this policy shift is the fact that "federal law and regulations did not envision the use of a state's fair hearing process to adjudicate contractual and payment claims between a provider and its subcontractors." Compliance with laws and regulations governing Medicaid is a fair and rational basis for the Division to depart from its prior practice. Pentskiff is therefore not entitled to relief on the basis of the Division's rule change.

¶11    In conclusion, we decline to disturb the Division's decision to dismiss Pentskiff's claims on jurisdictional grounds. Also, even if Pentskiff were substantially prejudiced by the Division's departure from its prior practice, we conclude that the departure was justified by a fair and rational basis.

————