HARPER INVESTMENTS, INC., Harper Sand and Gravel, Inc., Harper Excavating, Inc., and Harper Contracting, Inc., Petitioners,

v.

AUDITING DIVISION, UTAH STATE TAX COMMISSION, Respondent.

No. 920310.

Supreme Court of Utah.

Feb. 2, 1994.

Robert A. Peterson, Richard C. Skeen, and Robert W. Payne, Salt Lake City, for petitioners.

Jan Graham, Atty. Gen. and Clark L. Snelson, Asst. Atty. Gen., Salt Lake City, for respondent.

ZIMMERMAN, Chief Justice:

Harper Investments, Inc., Harper Sand and Gravel, Inc., Harper Excavating, Inc., and Harper Contracting, Inc. (collectively referred to as "Harper Companies"), appeal from a decision of the Utah State Tax Commission ("Commission") that assessed them $582,273.93 in sales taxes arising from the sale of sand and gravel. The Harper Companies argue that this assessment was in error because it did not arise from actual sales, but from an erroneous in-house accounting treatment of the transactions in question. We agree and reverse.

The material facts are not in dispute. Harper Excavating, Inc., operated a business involving excavating, cleaning, hauling, and distributing sand, gravel, and other materials. In 1986, for reasons not relevant here, Harper Excavating restructured by transferring its assets to three new wholly owned subsidiaries—Harper Sand and Gravel, Har-

per Investments,[1] and Harper Contracting. Harper Excavating, the new parent corporation, later changed its name to Harper Investments.

These corporate changes required a restructuring of the manner in which the new group of companies accounted for transactions with third parties and among themselves. Controller Steven Goddard, who was solely responsible for setting up the new accounting procedures, distributed on the books the various assets owned by the former Harper Excavating to the three subsidiaries. Goddard thought he was distributing these assets in accordance with underlying legal and physical realities. However, he erred. He accounted one of those assets, a group of sand and gravel sales agreements, as property of Harper Sand and Gravel. In fact, the sales contracts had already been assigned to Harper Contracting. As a result of this error, every time material covered by those contracts was delivered by Harper Contracting, the books reflected a sale from Harper Sand and Gravel to Harper Contracting. The Harper Companies did not discover Goddard's error until the Commission reviewed the companies' books in 1988 and assessed liability for unpaid taxes on "intra-unit" sales.

The Commission gave notice of the tax deficiencies on September 28, 1990. On October 26, 1990, the Harper Companies petitioned for redetermination, and a hearing was held on July 30, 1991. On January 9, 1992, the Commission issued findings of fact, conclusions of law, and a final decision affirming the original sales tax assessment. Although the decision affected each individual company, a copy was mailed only to Harper Investments in care of its counsel, Van Cott, Bagley, Cornwall and McCarthy. None of the four individual petitioners or their counsel received a copy of the decision until February 20th, forty-two days after it was issued. As a result, the twenty-day period provided in the Code for filing a petition for reconsideration had expired. *See* Utah Code Ann. § 63–46b–13(1)(a). The Harper Companies then sought an extension

---

1. Harper Investments later changed its name to Harper Excavating.

of time within which to file their petition for reconsideration. That extension was granted under authority of section 63–46b–1(9), and the Harper Companies filed a petition for reconsideration on May 4, 1992. The Commission, however, denied the petition in a final order dated June 3, 1992. The Harper Companies filed a petition for review of agency action with this court on July 1, 1992, claiming that the Commission erred in assessing sales taxes that were based solely on a good faith error in an accounting procedure.

We first address the standard of review. The Commission's decision raises questions of law. "We grant the Commission no deference concerning its conclusions of law, applying a correction-of-error standard, unless there is an explicit grant of discretion contained in a statute at issue before the appellate court." Utah Code Ann. § 59–1–610(1)(b) (Supp.1993); *see also Board of Equalization v. State Tax Comm'n ex rel. Benchmark, Inc.*, 864 P.2d 882, 884 (1993) (holding that section 59–1–610 applies to actions commenced before its effective date). The statutes at issue do not grant the Commission any discretion in their interpretation. *See 49th Street Galleria v. Tax Comm'n*, 860 P.2d 996, 999 (Utah Ct.App.1993) ("[S]ection 59–12–103[ ] does not contain language which would even arguably constitute an *explicit* grant of discretion to the Tax Commission . . . ."). Therefore, the no-deference standard applies.

■ The Commission asserts that the Harper Companies missed the statutory deadline for obtaining judicial review under section 63–46b–14. That provision requires a request for review to be made within thirty days from the date the agency decision is issued or deemed to have been issued. Utah Code Ann. § 63–46b–14(3)(a). Because the final decision was dated January 9, 1992, and review was not sought until July 1, 1992, the Commission claims that section 63–46b–14 bars our consideration of the matter. The Commission further argues that it did not extend the time limit for seeking judicial review when it granted an extension of time for filing a petition for reconsideration. For this argument, the Commission relies on section 63–46b–1(9), which provides, "Nothing in this chapter may be interpreted to restrict a presiding officer, for good cause shown, from lengthening or shortening any time period prescribed in this chapter, except those time periods established for judicial review." Utah Code Ann. § 63–46b–1(9).

We do not agree with the Commission's position. The Commission did not purport to extend the thirty-day limit for seeking judicial review. Rather, it extended the time for petitioning for reconsideration. The Code allows a petitioner to seek reconsideration of an agency decision within twenty days or to seek immediate judicial review within thirty days of a final decision and forego any further agency action. Utah Code Ann. §§ 63–46b–13(1)(a)–(b), –14(3)(a). In this case, the Harper Companies sought a "good cause" extension of time to seek reconsideration, which the Commission granted. This extension operated to extend the date on which the agency decision became "final" by tolling the thirty-day period for seeking judicial review. Because the Commission did not deny the petition for reconsideration until June 3, 1992, we conclude that the July 1st filing for judicial review was timely.

■ In the alternative, the Commission argues that the Harper Companies were tardy in seeking judicial review because the Code provides that a petition for reconsideration is "deemed denied" if no action is taken by the agency within twenty days of the petition. *See* Utah Code Ann. § 63–46b–13(3)(b). The Commission claims that the thirty-day period for seeking judicial review began to run on May 25, 1992, twenty days from the day on which the Harper Companies petitioned for reconsideration. As a result, the Commission argues, the July 1st filing for judicial review was past the thirty-day period.

This issue was specifically addressed in *49th Street Galleria*, 860 P.2d at 998–99. There, the court of appeals held that a petition for judicial review was timely filed because the agency involved had issued an order denying reconsideration after the twenty-day "deemed denied" period. *Id.* at 999. The court noted that section 63–46b–14(3)(a) allows a party to file a petition for judicial

review within thirty days *after the date on which an order was issued or was considered to have been issued.* *Id.* The court found that if an agency chooses to issue an order denying a petition for reconsideration after the twenty-day presumptive denial period, the actual date of issuance would mark the beginning of the thirty-day time period. *Id.*

We agree with the court of appeals' interpretation of section 63–46b–14(3)(a). When the Harper Companies chose not to file their petition for review within the twenty-day period, they assumed the risk that there would be no order from the Commission. They would have missed the deadline if the Commission had never issued its final decision of June 3, 1992. However, because the Commission chose to consider the petition for reconsideration and to act on it by issuing an order, the period for seeking review did not begin to run until the date of that final opinion. As a result, once the order was issued, the Harper Companies had an additional thirty days to file, and they did so.

■ We now turn to the Harper Companies' argument that the Commission wrongly assessed a sales tax on transactions that were reflected in the accounting records but did not have any legal reality. The Harper Companies argue that the underlying facts of ownership should govern, not the manner in which the transactions were accounted for, at least when, as here, the accounting was a result of an indisputably good faith error by the accountant. We agree. As the United States Supreme Court has observed, accounting records "are no more than evidential, being neither indispensable nor conclusive. The decision must rest upon the actual facts." *Doyle v. Mitchell Bros. Co.,* 247 U.S. 179, 187, 38 S.Ct. 467, 470, 62 L.Ed. 1054 (1918). In apparent recognition of this principle, even the Commission's final decision found that the sand and gravel sales contracts had been "mistakenly assigned" to Harper Sand and Gravel. Therefore, there is no dispute on the record that the accounting records were prepared in good faith but reflected a transaction that did not exist. We therefore hold that the Commission can-

not assess a sales tax on those nonexistent transactions.

Reversed.

---

STEWART, Associate C.J., and DURHAM, J., and RUSSELL W. BENCH, Court of Appeals Judge, concur.

HALL, J., does not participate herein; BENCH, Court of Appeals Judge, sat.

HOWE, Justice, dissenting:

I dissent. The majority has misinterpreted the legislative intent as to the deadline for filing a petition for judicial review of the Tax Commission's final action.

Section 63–46b–13 provides that any party may timely request reconsideration of an agency's order. I agree with the majority that Harper did that here. If reconsideration is not granted, the party may seek judicial review. In order to move along the reconsideration process, the legislature provided in section 63–46b–13(3)(b) that "if the agency head or the person designated for that purpose does not issue an order within twenty days after the filing of the request, the request for reconsideration shall be considered to be denied." Thus, if no agency action has been taken on the request for reconsideration within twenty days, the statute automatically makes the request denied.

The next step for an aggrieved party would be to file a petition for judicial review of the agency action. Section 63–46b–14(3)(a) provides that this filing must be done "within thirty days after the date that the order constituting the final agency action is issued or is considered to have been issued under Subsection 63–46b–13(3)(b)." The majority misconstrues the intent of this statute. It erroneously interprets the statute as starting the thirty days' appeal time to run from either the date on which the agency denies the request for reconsideration or the date on which it is considered denied under subsection 63–46b–13(3)(b), *whichever is later.* This interpretation makes no sense and defeats the legislative intent of expediting the administrative process. The reasonable interpretation is that the thirty days for filing a petition for judicial review begin to run when the agency denies the request for re-

consideration, but if the agency has not done so within twenty days, the request is considered denied at that time and the appeal time starts running.

The majority's interpretation produces the anomalous result that when an agency does not act on a request for reconsideration within twenty days, it is considered to be denied, but at any time thereafter (and apparently without any outside limit) the agency may act on the request, thereby breathing life into the case, and start running again the thirty days to seek judicial review. I submit that this interpretation is without parallel anywhere in our statutes or rules of practice in any other context. The majority cites no authority for its interpretation. On the other hand, the Supreme Court of Iowa in *Ford Motor Co. v. Iowa Department of Transportation Regulations Board*, 282 N.W.2d 701 (Iowa 1979), was presented with the identical question. There, the Administrative Procedure Act provided that an application for rehearing shall be "deemed to have been denied" unless the agency grants the application within twenty days after its filing. *Id.* at 702–03. A further rule provided that a petition for judicial review must be filed within thirty days after the application for rehearing has been denied or deemed denied. The court held that the agency must act on the application for rehearing, if at all, within twenty days. If it has not done so, the application for rehearing is deemed denied and the appeal time starts to run and cannot be restarted by a subsequent denial of the application by the agency. In its opinion, the court wrote:

> Parties to the proceedings have a need for and a right to a prompt disposition of a dispute. We are confident that the legislature was fully aware that administrative agencies might meet irregularly. Hence, in the interest of a prompt disposition of disputes, the legislature superimposed an automatic denial of any application not ruled upon within the prescribed period.
> Regrettable hardships may well result to litigants who are unaware of the "deemed denied" provisions of the statute. But it is in the overall interest of litigants and the public at large that administrative proceed-

ings move to a prompt conclusion. The legislature obviously had the broader public interest in mind in adopting the statute.

*Id.* at 703. The same result was reached in *Davis v. Alabama Medicaid Agency*, 519 So.2d 538 (Ala.Civ.App.1987). There, a statute provided that an aggrieved party may file an application for rehearing with an agency within fifteen days after entry of its order. It was further provided that if the agency enters no order regarding the application within thirty days, the application shall be deemed denied. A petition for judicial review was required to be filed within thirty days after the decision on the request for rehearing is rendered. The court held that once the thirty days had run from the filing of the application for rehearing, the time to appeal began to run and could not be altered or extended by the agency's subsequent denial of the application for rehearing. *Id.* at 539.

The majority creates a dilemma for an aggrieved party who desires to seek judicial review. If the party has requested reconsideration by the administrative agency but no action has been taken on the request by the end of twenty days, an appeal must then be filed. If, however, the agency later (and there is no limitation as to how much later) acts on the request and denies it, the appeal which has been taken turns out to be premature and must be dismissed. The party must then file a second appeal, supposedly pay another filing fee, and continue pursuit of the appeal. In no other context in our appellate system do we tolerate such uncertainty as to when an order is final and appealable and subject a party seeking review to such a duplicative and hazardous procedure.

I would dismiss the appeal as having been filed untimely.