2014 UT App 219

## THE UTAH COURT OF APPEALS

JESUS MONARREZ,
Plaintiff and Appellant,

*v.*

UTAH DEPARTMENT OF TRANSPORTATION,
Defendant and Appellee.

Opinion
No. 20130378-CA
Filed September 11, 2014

Third District Court, Salt Lake Department
The Honorable Vernice S. Trease
No. 120907616

Matthew G. Koyle and F. Kim Walpole, Attorneys
for Appellant

Sean D. Reyes and Stanford E. Purser, Attorneys
for Appellee

JUDGE STEPHEN L. ROTH authored this Opinion, in which SENIOR JUDGE RUSSELL W. BENCH concurred.[1] JUDGE J. FREDERIC VOROS JR. dissented, with opinion.

ROTH, Judge:

¶1 Jesus Monarrez appeals from the district court's grant of summary judgment in favor of the Utah Department of Transportation (UDOT). Monarrez contests the district court's

---

1. The Honorable Russell W. Bench, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11-201(6).

interpretation of a provision in the Governmental Immunity Act of Utah governing the time for filing a complaint after a governmental entity denies a notice of claim (the Limitations Provision). Alternatively, he contends that if we conclude that the district court properly interpreted the Limitations Provision, we should either apply the interpretation only prospectively or conclude that UDOT was estopped from asserting the statute as a basis for summary judgment. Monarrez also argues that the district court erred in dismissing his claims against several John Doe defendants because UDOT failed to establish that they were government employees. We affirm the district court's summary judgment ruling.

BACKGROUND

¶2      This case arises under the Governmental Immunity Act of Utah (the GIAU). As a prerequisite to filing suit against a governmental entity, the GIAU requires an injured party to file a notice of claim with the entity within one year after the claim arises. Utah Code Ann. § 63G-7-402 (LexisNexis 2011)[2] (explaining that "[a] claim against a governmental entity, or against an employee . . . is barred unless notice of claim is filed . . . within one year after the claim arises"). The governmental entity has sixty days to approve or deny the claim, after which the claim is deemed denied. *Id.* § 63G-7-403(1)(b) ("A claim is considered to be denied if, at the end of the 60-day period [following the filing of the notice of claim], the governmental entity or its insurance carrier has failed to approve or deny the claim."). The claimant then has one year after the denial of the claim to file litigation in the district court. *Id.* § 63G-7-403(2)(b).

---

2. Because the statutory provisions pertinent to this appeal have not been substantively amended, we cite to the current version of the Utah Code.

¶3     On August 24, 2010, Monarrez was injured in a motorcycle crash that happened when he was forced to come to a sudden stop on a slick area of roadway within a UDOT construction zone. One year later, on August 23, 2011, Monarrez filed a timely notice of claim, alleging that UDOT failed to post warning signs or otherwise take measures to slow down traffic in the construction zone. UDOT did not respond to Monarrez's notice of claim within sixty days of receiving it, and it asserts that the claim was therefore automatically deemed denied on October 24, 2011. However, three-and-a-half weeks later, on November 15, 2011, UDOT sent Monarrez a letter that purported to affirmatively deny his claim (the November 15 denial letter). That letter informed Monarrez that after "an investigation of your claim," UDOT's insurance carrier had "concluded that our client is not liable" and therefore, UDOT must "respectively deny your claim." The letter also informed Monarrez that the issuance of the letter "does not constitute a waiver of any of the provisions or requirements of the Governmental Immunity Act, Utah Code Ann. 63G-7-401 *et seq*."

¶4     On November 9, 2012, more than one year after the deemed-denied date but less than one year after the November 15 denial letter, Monarrez filed a complaint in the Third District Court against UDOT and several John Does, who were alleged to be "construction companies and/or their employees." UDOT moved for summary judgment on the basis that Monarrez's claims were barred by subsection (2) of the GIAU's Limitations Provision, which requires claims against a governmental entity to be filed "within one year after the denial of the claim or within one year after the denial period." *Id.* § 63G-7-403(2)(b). Because the claim was deemed denied on October 24, 2011, UDOT contended that the November 9, 2012 complaint was untimely. The district court agreed and granted UDOT's motion, resulting in the dismissal of Monarrez's claims against all parties with prejudice. Monarrez now appeals.

ISSUE AND STANDARD OF REVIEW

¶5 Monarrez contends that summary judgment was improperly granted in favor of UDOT and the Doe defendants. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). "An appellate court reviews a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness and views the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citations and internal quotation marks omitted).

ANALYSIS

¶6 Monarrez asserts three alternative bases for reversing the district court's summary judgment decision. First, he contends that the district court incorrectly interpreted subsection (2) of the Limitations Provision, which requires that a complaint be filed "within one year after the denial of the claim or within one year after the [sixty-day] denial period." Utah Code Ann. § 63G-7-403(2)(b). Second, he contends that if we conclude that the district court's interpretation of the Limitations Provision was proper, it should apply only prospectively and not to his case. Third, he asserts that UDOT should be estopped from raising the GIAU as a defense because it sent him a written denial letter after the deemed-denied date.

¶7 Finally, Monarrez argues that the court erred in granting summary judgment with respect to the Doe defendants. He contends that when the facts are construed in his favor, they indisputably demonstrate that the Doe defendants were not government employees subject to the requirements of the GIAU. We address each of these arguments in turn.

I. Statutory Interpretation

¶8    Whether the district court correctly interpreted the Limitations Provision of the GIAU is a question of law, and we consider the statutory language de novo, according no deference to the district court's interpretation. *See Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 12, 267 P.3d 863. The Limitations Provision reads,

> (1)(a) Within 60 days of the filing of a notice of claim, the governmental entity or its insurance carrier shall inform the claimant in writing that the claim has either been approved or denied.
>
> (b) A claim is considered to be denied if, at the end of the 60-day period, the governmental entity or its insurance carrier has failed to approve or deny the claim.
>
> (2)(a) If the claim is denied, a claimant may institute an action in the district court against the governmental entity or an employee of the entity.
>
> (b) The claimant shall begin the action within one year after denial of the claim or within one year after the denial period specified in this chapter has expired, regardless of whether or not the function giving rise to the claim is characterized as governmental.

Utah Code Ann. § 63G-7-403 (LexisNexis 2011).

¶9    Monarrez's first argument focuses on the language in subsection (2) directing a claimant to begin an action "within one year after denial of the claim or within one year after the denial period." *Id.* § 63G-7-403(2)(b). Monarrez contends that although subsection (1)(b) deems a claim denied once sixty days has passed without a response from the government, UDOT's letter denying his claim in writing after the deemed-denied date

constituted an actual "denial of the claim" for purposes of determining the start of the one-year period for filing a complaint set out in subsection (2). Thus, according to Monarrez, his complaint was timely if filed within one year of either the deemed denial on October 24, 2011, or the written denial on November 15, 2011.

¶10    Monarrez finds support for his position in the use of the word "or" in subsection (2), which he interprets to mean that when there is both a deemed denial and a subsequent written denial, the claimant has a choice of filing within one year of either date. *See id.* In other words, according to Monarrez, the deemed-denied date starts the clock on the one-year period to file a complaint only if there is no written denial, but a written denial governs the time to file no matter when it is issued, whether before or after the sixty-day period. Adopting Monarrez's interpretation of subsection (2) would render his November 9, 2012 complaint timely because the complaint was filed within one year of the written denial on November 15, 2011, even though it was beyond one year from the deemed-denied date.

¶11    UDOT counters by pointing to case law that states that the Limitations Provision must be "interpreted as a comprehensive whole and not in piecemeal fashion." *See Business Aviation of S.D., Inc. v. Medivest, Inc.*, 882 P.2d 662, 665 (Utah 1994) (citation and internal quotation marks omitted). According to UDOT, subsection (1) of the Limitations Provision provides two means for denying a claim that are mutually exclusive: actual denial within sixty days of the notice of claim or deemed denial once sixty days has elapsed without a response. *See* Utah Code Ann. § 63G-7-403(1). Thus, it contends, subsection (2) requires a claimant to commence legal action within one year of the denial date that applies: if a written denial is sent within sixty days, then a year from the letter's date, and if no written denial is issued within sixty days, then a year from the end of that period. According to UDOT's reading of the statute, Monarrez's complaint is untimely because UDOT did not deny

his claim in writing within sixty days so the denial occurred automatically on October 24, 2011, and Monarrez filed his complaint more than a year later.

¶12   We first look to the plain language of a statute to ascertain its meaning. *H.U.F. v. W.P.W.*, 2009 UT 10, ¶ 32, 203 P.3d 943. "In doing so, [w]e presume that the legislature used each word advisedly and read each term according to its ordinary and accepted meaning." *Harold Selman, Inc. v. Box Elder Cnty.*, 2011 UT 18, ¶ 18, 251 P.3d 804 (alteration in original) (citation and internal quotation marks omitted). "We [then] read the plain language of a statute as a whole and interpret its provisions in harmony with other provisions in the same statute and with other statutes under the same and related chapters." *H.U.F.*, 2009 UT 10, ¶ 32.

¶13   Subsection (1) states that "[w]ithin 60 days of the filing of a notice of claim, the governmental entity or its insurance carrier shall inform the claimant in writing that the claim has either been approved or denied." Utah Code Ann. § 63G-7-403(1)(a) (LexisNexis 2011). Failure to so inform the claimant results in the "claim [being] considered to be denied . . . at the end of the 60-day period." *Id.* § 63G-7-403(1)(b). A plain reading of subsection (1) informs us that the legislature intended the government to provide a response to a notice of claim within sixty days of receiving it. *Id.* § 63G-7-403(1)(a); *see also Board of Educ. of Granite Sch. Dist. v. Salt Lake Cnty.*, 659 P.2d 1030, 1035 (Utah 1983) (explaining that the word "shall" is "usually presumed mandatory," meaning the desired outcome must occur according to the terms of the statute). Recognizing that a response may not always be forthcoming within the time period prescribed, however, the legislature provided a safeguard for the claimant as a potential plaintiff: the claim is deemed denied upon the expiration of the sixty-day response period so as to clearly mark the start of the one-year limitations period for filing a complaint in district court and to minimize the potential for bureaucratic delay in resolution of the claim. Utah Code Ann. § 63G-7-403(1)(b), (2). Thus, subsection (1) clearly sets out two

mutually-exclusive methods for the resolution of the claimant's notice of claim—through the government's written response approving or denying the claim within sixty days or by deemed denial on day sixty-one if the government has provided no response. With this interpretation of subsection (1) in mind, we now consider the meaning of subsection (2).

¶14    Subsection (2) provides that the claimant "*may* institute an action in the district court against the governmental entity" after a notice of claim is denied. *Id.* § 63G-7-403(2)(a) (emphasis added). Upon electing to proceed in the courts, the claimant *must* do so "within one year after denial of the claim or within one year after the denial period specified." *Id.* § 63G-7-403(2)(b). In isolation, we might be inclined to read the word "or" as providing an alternative, as Monarrez advocates. *See, e.g., Calhoun v. State Farm Mut. Auto Ins. Co.*, 2004 UT 56, ¶ 20, 96 P.3d 916 ("The legislature's separation of these two [statutory] sections by the disjunctive 'or' as opposed to the conjunctive 'and,' clearly mandates that a policy need only provide owner's coverage or operator's coverage—not both.").

¶15    However, when subsection (2) is read "in harmony with" subsection (1), *see H.U.F.*, 2009 UT 10, ¶ 32, it becomes apparent that subsection (2) is providing a one-year deadline from whichever subsection (1) denial date applies—the date of actual denial if denied in writing within sixty days of the notice of claim or the deemed-denied date if the government failed to respond within sixty days. The Limitations Provision provides no other option for denial, and the structural symmetry of the section seems to confirm that none was intended. For instance, the denial sequence set out in subsection (1)—either written acceptance or denial within sixty days (subsection (1)(a)) or deemed denial at the end of sixty days (subsection (1)(b))—is mirrored in the time-for-filing requirements set out in subsection (2)(b), where the one-year time-for-filing period is matched first to a written "denial of the claim" and then to the end of "the denial period." The apparent synchronization of the order in which the denial options and the time-for-filing requirements

are discussed strongly suggests an intentional correlation. The plain language of this provision therefore does not support Monarrez's interpretation that a functionally superfluous denial letter restarts the one-year period for filing a complaint as of whatever date the letter may have been sent.

¶16  A determination that a statute's plain language unambiguously informs the public of its meaning generally ends the inquiry about a statute's interpretation. In this case, however, Monarrez points to two other statutory provisions—found in Utah's Administrative Procedures Act (APA) and Governmental Records Access and Management Act (GRAMA)—that contain similar phrasing and have been interpreted to permit a choice of filing date when the government denies a request in writing after the request has already been deemed denied as a matter of law.

A.  APA

¶17  The APA authorizes a party to request reconsideration of certain agency decisions. Utah Code Ann. § 63G-4-302(1)(a) (LexisNexis 2011). If the agency does not respond within twenty days, "the request for reconsideration shall be considered to be denied." *Id.* § 63G-4-302(3)(b). The time period for seeking judicial review then extends for thirty days from either the date the agency denies the request for reconsideration in writing *or* the deemed-denied date of the request. *Id.* § 63G-4-401(3)(a) ("A party shall file a petition for judicial review of final agency action within 30 days after the date that the order constituting the final agency action is issued or is considered to have been issued under Subsection 63G-4-302(3)(b).").

¶18  In *Harper Investments, Inc. v. Auditing Division, Utah State Tax Commission*, 868 P.2d 813 (Utah 1994), our supreme court interpreted these provisions in considering whether the Harper companies' request for judicial review was timely. *Id.* at 815–16 (interpreting the 1989 version of the APA, which contained provisions identical to their counterparts in the current version).

The Harper companies petitioned, on May 4, 1992, for reconsideration of a tax assessment. *Id.* at 815. The Tax Commission did not respond, and as a result, the request was deemed denied, by operation of law, on May 25. *Id.* On June 3, however, the Tax Commission formally denied the petition for reconsideration in a final written order. *Id.* The Harper companies sought judicial review on July 1, more than thirty days past the deemed-denied date but within thirty days of the written denial. *Id.* The Tax Commission took the position that the Harper companies "were tardy in seeking judicial review [on July 1] because the [APA] provides that a petition for reconsideration is 'deemed denied' if no action is taken by the agency within twenty days of the petition . . . . [Thus,] the thirty-day period for seeking judicial review began to run on May 25, 1992." *Id.* (citation omitted). The supreme court disagreed, concluding that "if an agency chooses to issue an order denying a petition for reconsideration after the twenty-day presumptive denial period, the actual date of issuance would mark the beginning of the thirty-day time period." *Id.* at 816 (citing *49th St. Galleria v. Tax Comm'n, Auditing Div.*, 860 P.2d 996, 999 (Utah Ct. App. 1993) (addressing the same question where the tax commission sent a written denial after the time for seeking judicial review had expired)). The court explained that the Harper companies had assumed the risk that there would be no order from the Tax Commission on their petition for reconsideration when they failed to seek judicial review within thirty days of the deemed-denied date. *Id.* But once the Tax Commission elected to issue a subsequent written denial, the Harper companies received the benefit of a refreshed time period for filing an appeal. *Id.* Because the Harper companies' request for judicial review was timely with respect to the written denial, the supreme court concluded that it would consider the merits of their appeal. *Id.*[3]

---

3. Justice Howe dissented from the majority's conclusion that a late-issued written denial refreshed the time period for filing an appeal. In doing so, he relied upon the plain language of the

(continued . . .)

¶19 Eight years later, the Utah Supreme Court applied *Harper Investments'* reasoning when it considered the interpretation of an analogous provision in GRAMA.

B. GRAMA

¶20 GRAMA establishes a process for requesting governmental records and appealing the denial of such a request. Utah Code Ann. §§ 63G-2-401 to -405 (LexisNexis 2011 & Supp. 2013). To appeal the denial of a records request, the requesting party must file a notice of appeal with the chief

---

statute, which he concluded clearly states that "the thirty days' appeal time . . . run[s] from *either* the date on which the agency denies the request for reconsideration or the date on which it is considered denied" and does not lend itself to the interpretation the majority gave it where the "thirty days' appeal time . . . [would] run from . . . *whichever* [*date*] *is later.*" *Harper Invs., Inc. v. Auditing Div., Utah State Tax Comm'n*, 868 P.2d 813, 816 (Utah 1994) (Howe, J., dissenting) (first emphasis added).

Justice Howe expressed concern that the majority's reading added uncertainty to the appeal process, noting that "when an agency does not act on a request for reconsideration within twenty days, it is considered to be denied," thus triggering the time for seeking judicial review. *Id.* at 817. But under the majority's interpretation, "at any time thereafter (and apparently without any outside limit) the agency may act on the request, thereby breathing life into the case, and start running again the thirty days to seek judicial review." *Id.* "[Such uncertainty] creates a dilemma for an aggrieved party who desires to seek judicial review" because he or she must seek judicial review within thirty days of the deemed-denied date or risk losing the right to appeal altogether. *Id.* Yet, if the request is later denied in writing, the original appeal is premature and may have to be dismissed and refiled, resulting in additional costs and unnecessary duplication in the process. *Id.*

administrative officer of the governmental entity. *Id.* § 63G-2-401(1)(a) (LexisNexis Supp. 2013). The chief administrative officer then has either five or twelve days, depending on the type of request, to "make a determination on the appeal." *Id.* § 63G-2-401(5)(a). And "[i]f the chief administrative officer fails to make a determination within the time specified . . . , the failure shall be considered the equivalent of an order denying the appeal." *Id.* § 63G-2-401(5)(b). The requester may then petition for judicial review in the district court. *Id.* § 63G-2-402(1)(b) (LexisNexis 2011). The requester must do so within "30 days after the governmental entity has responded to the records request . . . [by] denying the request" *or* "35 days after the original request if the governmental entity failed to respond to the request." *Id.* § 63G-2-404(2)(b) (LexisNexis Supp. 2013).

¶21    The Utah Supreme Court considered the application of these provisions in *Young v. Salt Lake County*, 2002 UT 70, 52 P.3d 1240. *Id.* ¶¶ 6–11 (interpreting the 1997 version of GRAMA, which contains the same pertinent language as the current version). After Salt Lake County terminated Young's employment as a sheriff's deputy for disciplinary reasons, Young sought the disciplinary records of other deputies who had been investigated for similar conduct. *Id.* ¶ 2. The county denied Young's records request, and Young filed a timely notice of appeal with the county sheriff on March 28, 2000. *Id.* ¶¶ 3, 7. The sheriff did not respond within the required five days, resulting in the deemed denial of Young's appeal on April 3, but on April 20, the sheriff issued a letter expressly denying the appeal. *Id.* ¶ 7. On May 16, more than thirty-five days from the notice of appeal but less than thirty days after the written denial, Young petitioned for judicial review in the district court. *Id.* The county asserted that the petition was untimely because GRAMA required Young to have filed it by May 2, 2000, thirty-five days after the notice of appeal to the sheriff. *See id.* ¶ 8.

¶22    The supreme court disagreed, holding that the statute's use of "the word 'or' between the . . . alternative time periods for filing" clearly allowed Young to file his complaint for judicial

review within thirty days of the sheriff's written denial of his appeal. *Id.* ¶ 9; *see also id.* ¶¶ 10–11 (citing *Harper Invs., Inc.*, 868 P.2d at 815). In a footnote, the court further reasoned that the May 16 petition for judicial review ought to be considered timely because GRAMA "authorizes the parties to extend the specified time periods by agreement" and the parties had implicitly agreed to extend the sheriff's time to act. *Id.* ¶ 11 n.2; *see also* Utah Code Ann. § 63G-2-401(5)(c) (LexisNexis Supp. 2013) ("The provisions of this section [governing appeals of a GRAMA request] notwithstanding, the parties participating in the proceeding may, by agreement, extend the time periods specified in this section."). The court cited the sheriff's decision to respond in writing after the appeal had already been deemed denied and Young's reliance on the date of the written decision for calculating the time period for seeking judicial review as evidence of such an agreement. *Young*, 2002 UT 70, ¶ 11 n.2. Consequently, it determined that there was "no statutory bar" preventing the sheriff from responding in writing after the deemed-denied date or precluding Young's petition for judicial review from being filed within thirty days of the written denial. *Id.*

C.     GIAU

¶23     Despite some similarities in language, we conclude that the APA and GRAMA limitations provisions are sufficiently distinguishable so that neither *Harper Investments* nor *Young* call into question our plain language reading of the GIAU. In this regard, we believe there are three significant distinctions between the GIAU and the APA and GRAMA.

¶24     First, the cases cited by Monarrez each deal with the time period for seeking judicial review after a governmental entity's denial of a post-decisional petition for further consideration (or reconsideration) of an issue that had already been decided on the merits. *Young*, 2002 UT 70, ¶ 7 (discussing time periods in relation to GRAMA's internal agency appeal process after decision on initial records request); *Harper Invs., Inc. v. Auditing*

*Div., Utah State Tax Comm'n,* 868 P.2d 813, 815 (Utah 1994) (addressing time periods for judicial review after a petition for reconsideration of final agency action); *49th St. Galleria v. Tax Comm'n, Auditing Div.,* 860 P.2d 996, 998 (Utah Ct. App. 1993) (same as *Harper Investments*). The procedural posture of those cases creates an incentive for the party requesting reconsideration to wait beyond the deemed-denied date for the governmental entity's written ruling because the decision could provide a considered response to the reconsideration request that would be helpful to the petitioner's decision whether to even seek judicial review. Furthermore, the entity's written explanation of the reasons for denying the petition could facilitate the judicial review process itself. *See, e.g., 49th St. Galleria,* 860 P.2d at 998 n.7 (observing that the Tax Commission's denial of 49th Street Galleria's request for consideration, although untimely, was multi-paged and not entered merely as a "meaningless gesture"). In contrast, the governmental response to a notice of claim under the GIAU is more likely to simply approve or deny a claim without any detailed analysis to support the decision because there appears to be little incentive to explain such a decision in any detail. *See* Utah Code Ann. § 63G-7-403(1)(a) (LexisNexis 2011) (requiring only that the governmental entity or its insurance carrier notify the claimant that his or her claim has been approved or denied).

¶25   The second distinction is related to the first. Under both the APA and GRAMA, the aggrieved party has a very short time period—approximately thirty days—within which to seek judicial review after the deemed-denied date. *Id.* § 63G-4-401(3)(a) (the APA); *id.* § 63G-2-404(2)(b) (LexisNexis Supp. 2013) (GRAMA). And in all three cases cited by Monarrez, the late-issued written denial came either after the time for seeking review had expired or at the very end of that period. *Young,* 2002 UT 70, ¶ 7 (sending a letter denying the notice of appeal on the twenty-third day of the thirty-five-day period for seeking judicial review of a deemed-denied appeal); *Harper Invs., Inc.,* 868 P.2d at 815 (issuing an order denying reconsideration on the thirtieth day of the thirty-day period for seeking judicial review);

*49th St. Galleria*, 860 P.2d at 998 & n.2 (issuing a multiple-page order denying the petition for reconsideration ninety-one days after the petition was filed and more than sixty days after the period for seeking judicial review expired). But even though there is an incentive for a party to wait for a written ruling, were the deemed-denied date the only trigger for the judicial review period, parties would be discouraged from doing so by the very high risk of missing the review deadline should they opt to wait for the governmental entity's presumably more informative written ruling before deciding whether to appeal the original decision. And the entity's incentive to more thoroughly consider post-decisional petitions through the mechanism of an explanatory written ruling could be considerably reduced were the judicial review deadline tied solely to the deemed-denied date. Under the GIAU, on the other hand, the claimant has an entire year after the deemed-denied date to file a complaint. Utah Code Ann. § 63G-7-403(2)(b) (LexisNexis 2011). Thus, to the extent UDOT's decision to send Monarrez a written denial letter in November 2011, three-and-a-half weeks after the deemed-denied date, created any uncertainty about the precise date upon which the one-year period began, Monarrez still had over eleven months from the November 15 denial letter in which to timely file his complaint. Therefore, a post-denial written response— such as UDOT's here—does not seem to create the kind of dilemma for a tort claimant that the much shorter timelines of the APA and GRAMA pose for those who have filed requests for further consideration of the original decision.

¶26 Finally, under GRAMA—and apparently under the APA, as well—the deadlines for a governmental entity's response can be extended. In *Young*, the supreme court concluded that the sheriff's late-sent letter denying Young's appeal reopened the time for filing a petition for judicial review. *Young v. Salt Lake Cnty.*, 2002 UT 70, ¶¶ 9–11, 52 P.3d 1240. The court explained that its conclusion was based in part on the fact that GRAMA expressly authorizes the parties to extend by agreement the time periods specified in the act, including the deadline for the chief administrative officer to respond. *Id.* ¶ 11 n.2. The APA also

appears to provide similar authority to extend deadlines, although this authority was not explicitly relied on in either *Harper Investments* or *49th Street Galleria*. *See* Utah Code Ann. § 63G-4-102(9) ("Nothing in this chapter may be interpreted to restrict a presiding officer, for good cause shown, from lengthening or shortening a time period prescribed in this chapter, except the time period established for judicial review."). The GIAU appears to have no counterpart that authorizes an extension of the time to respond to a notice of claim.

¶27   Indeed, Utah courts have "consistently and uniformly held" that strict compliance with the GIAU is required. *Wheeler v. McPherson*, 2002 UT 16, ¶ 11, 40 P.3d 632 (citation and internal quotation marks omitted). "[T]his standard of strict compliance derives naturally from both basic principles of sovereign immunity and from the text of the Immunity Act itself." *Id.* Thus, "there is no authority for allowing anything less than strict compliance [with the GIAU] in the absence of ambiguity in the statute." *Gurule v. Salt Lake Cnty.*, 2003 UT 25, ¶ 9, 69 P.3d 1287. Applying this standard, we have "repeatedly denied recourse to parties that have even slightly diverged from the exactness required by the Immunity Act." *Wheeler*, 2006 UT 16, ¶ 12. For example, we have upheld the dismissal of a cause of action against the government where the notice of claim was deemed denied in March 2004 but the claimant failed to file a complaint within one year of the deemed-denied date. *Morales v. State*, 2007 UT App 250U, paras. 3–5 (per curiam). In that case, the claimant had put off filing a complaint in reliance on a May 2004 letter from the State, indicating that the State was willing to settle the dispute. *Id.* para. 4. Nonetheless, we held that to maintain his claim, Morales "was compelled to comply with the express dictates of the Act" and was not excused from filing a complaint within the prescribed time period. *Id.* para. 5.

¶28   We are not persuaded that there are any ambiguities in the GIAU's Limitations Provision that would permit anything less than strict compliance with the GIAU requirements. Under this interpretation, Monarrez's complaint was due by October

24, 2012, one year after the deemed denial. The November 9, 2012 complaint was therefore untimely.

## II. Prospective Application

¶29   Monarrez nevertheless contends that, under the circumstances, we should apply this interpretation of the Limitations Provision only prospectively. In support of his argument, he asserts that this is a question of interpretation that has never before been addressed by our courts. He further argues that in light of the Utah appellate courts' interpretation of similar language in the APA and GRAMA, the Limitations Provision's language itself is not sufficiently clear to inform him that a filing made within one year of the written denial date but more than one year past the deemed-denied date would be barred as untimely. Monarrez also cites his California residency—in other words, his unfamiliarity with Utah law—as a basis for excusing his misinterpretation of the Limitations Provision.

¶30   "The general rule from time immemorial is that the ruling of a court is deemed to state the true nature of the law both retrospectively and prospectively." *Malan v. Lewis*, 693 P.2d 661, 676 (Utah 1984). Retroactive application is not rigidly required in civil cases, however, and we have discretion to depart from the general rule when retroactive application will result in "substantial injustice." *Id.* In making such a determination,

> we look to the impact retroactive application would have on those affected. When we conclude that there has been justifiable reliance on the prior state of the law or that the retroactive application of the new law may otherwise create an undue burden, the court may order that a decision apply only prospectively.

*Kennecott Corp. v. State Tax Comm'n of Utah*, 862 P.2d 1348, 1352 (Utah 1993) (citation and internal quotation marks omitted).

Some examples of circumstances in which appellate courts "have applied changed law only prospectively [include] cases where parties have planned tax strategy based on prior law," *Van Dyke v. Chappell*, 818 P.2d 1023, 1025 (Utah 1991) (citing *Loyal Order of Moose v. County Bd. of Equalization*, 657 P.2d 257, 265 (Utah 1982)), and "where a city has prepared its budget based on mill levies and tax collection figures based on a prior tax scheme," *id.* (citing *Rio Algom Corp. v. San Juan Cnty.*, 681 P.2d 184, 195–96 (Utah 1984)). In those cases, the reliance on the prior interpretation of the law was apparent; tax assessment and budget planning were being performed regularly using the law that had been superseded.

¶31    In contrast, our decision today does not depart from a prior understanding of the law; rather, it explicitly addresses the proper interpretation for the first time. Furthermore, although Utah appellate courts have not previously considered the application of the GIAU's Limitations Provision in the context we have addressed here, we have determined that its plain language is unambiguous and clearly communicates to an injured party the time constraints on filing a claim against a governmental entity and its employees. And while we recognize that Utah courts have interpreted certain provisions of the APA and GRAMA to allow a party to rely upon a written denial issued after the deemed-denied date as the start of the time period for seeking relief in the district court, we note that Monarrez has made no attempt to demonstrate that these cases have been relied upon to any extent to interpret the requirements of the GIAU's Limitations Provision. More specifically, Monarrez has not asserted that he relied upon those cases to determine that his complaint was not due until November 2012 or that because of them, the broader legal community has understood the Limitations Provision to mean that a governmental entity's written denial of a claim after the deemed-denied date restarts the one-year period for filing a complaint. Nor has he demonstrated that such reliance would have been reasonable in light of our long-standing adherence to the maxim that a claimant must strictly comply with

unambiguous GIAU requirements. *See Gurule*, 2003 UT 25, ¶ 9 ("[T]here is no authority for allowing anything less than strict compliance [with the GIAU] in the absence of ambiguity in the statute."); *Wheeler*, 2002 UT 16, ¶ 12 (observing that Utah appellate courts have "repeatedly denied recourse to parties that have even slightly diverged from the exactness required by the Immunity Act").

¶32　We also find no reason to believe that retroactive application of our interpretation of the GIAU's Limitations Provision creates an undue burden. Our decision does not undo or undermine a previous interpretation of the statute; it merely explicitly endorses the apparent meaning of the statute's plain language. And Monarrez has not demonstrated that he suffered any undue burden, e.g., that his California residence prevented him from understanding the Limitations Provision, particularly where he hired a Utah attorney to represent him.

¶33　We therefore conclude that retroactive application of the interpretation of the Limitations Provision has minimal impact and does not result in substantial injustice in this case. For these reasons, we deny Monarrez's request that the interpretation be applied prospectively only.

## III. Estoppel

¶34　Monarrez alternatively asserts that "UDOT should be estopped from raising the deemed denial because it chose to issue an actual denial letter after the deemed deni[ed] date." Monarrez's contention is not persuasive.

¶35　Generally, a claim of estoppel cannot be asserted against the government. *McLeod v. Retirement Bd.*, 2011 UT App 190, ¶ 20, 257 P.3d 1090. Utah courts have allowed a claim of equitable estoppel against a governmental entity when "necessary to prevent manifest injustice." *Celebrity Club, Inc. v. Utah Liquor Control Comm'n*, 602 P.2d 689, 694 (Utah 1979) (citation and internal quotation marks omitted); *Benson v. Peace*

*Officer Standards & Training Council*, 2011 UT App 220, ¶ 8, 261 P.3d 643. So far, however, "Utah courts have permitted estoppel against the government [only in cases that] have involved very specific written representations by authorized government entities." *Benson*, 2011 UT App 220, ¶ 12. We conclude that Monarrez has not established the elements for invoking estoppel against the government.

¶36    The elements of equitable estoppel are

> (1) an admission, statement, or act inconsistent with the claim afterwards asserted,
>
> (2) action by the other party on the faith of such admission, statement, or act, and
>
> (3) injury to [the] other party resulting from allowing the first party to contradict or repudiate such admission, statement, or act.

*Celebrity Club*, 602 P.2d at 694.

¶37    Monarrez contends that UDOT's summary judgment assertion that the GIAU required him to file his complaint within one year of the deemed-denied date, October 24, 2011, was inconsistent with UDOT's written denial letter on November 15, 2011. And, Monarrez contends, it was reasonable for him to rely upon the November 15 denial letter as the starting date for the one-year clock for filing his claim. Monarrez also asserts that he suffered harm as a result of that reliance because he is now barred from suing UDOT for the injuries he incurred in the motorcycle accident.

¶38    Monarrez's estoppel claim fails for a number of reasons. First, the November 15 denial letter, which Monarrez attached to his summary judgment opposition memorandum, is not an initial statement by UDOT that can be viewed as inconsistent with its later assertion that Monarrez must comply with the Limitations Provision. The sending of the letter is not itself an

affirmative representation that the Limitations Provision may be interpreted as Monarrez contends, especially in the face of the plain language of the statute. Furthermore, the November 15 denial letter does not purport to extend the time period for filing a claim against the government. And reliance upon the denial letter as the start of the time period for filing a complaint would not have been reasonable "because the notice of claim was denied on [October 24, 2011,] by operation of law." *See State v. Morales*, 2007 UT App 250U, para. 5 (per curiam). "Once the notice of claim was denied by operation of law, [Monarrez] was compelled to comply with the express dictates of the Act." *See id.*

¶39 Second, the November 15 letter explicitly informed Monarrez that the letter did "not constitute a waiver of any of the provisions or requirements of the Governmental Immunity Act, Utah Code Ann. 63G-7-401 *et seq.*" Therefore, UDOT's express reservation of its right to enforce the GIAU requirements in the written letter cannot be construed as inconsistent with its later assertion of the GIAU as a basis for dismissing the complaint. Rather, "[t]his language unambiguously informed" Monarrez that despite UDOT's written notice of denial sent after the deemed-denied date had passed, "the State was not waiving any defenses available to it under the Utah Governmental Immunity Act, nor was it excusing [him] from strictly complying with the Act's requirements." *See id.* (addressing an estoppel claim where the notice from the state contained identical non-waiver language). The doctrine of equitable estoppel therefore cannot save Monarrez's failure to file his complaint within one year of the deemed-denied date.

¶40 In summary, the Limitations Provision clearly provides that Monarrez had to file his complaint within one year of the deemed-denied date of October 24, 2011. We have declined Monarrez's invitation to apply the interpretation of the Limitations Provision prospectively only, and we have also rejected his contention that UDOT was estopped from asserting the limitations period. Accordingly, we affirm the grant of summary judgment.

IV. Dismissal of Doe Defendants

¶41     Finally, Monarrez contends that the district court erred in dismissing the Doe defendants when it granted UDOT's motion for summary judgment on the basis that he had not complied with the GIAU. Neither party submitted evidence about the identity of the Doe defendants in their summary judgment filings; instead, they both relied solely on the allegations of Monarrez's complaint to support their arguments.

¶42     Monarrez maintains that his complaint identified the Doe defendants simply as "construction companies and/or their employees" and not as government employees who are subject to the requirements of the GIAU. *See* Utah Code Ann. § 63G-7-201(1) (LexisNexis Supp. 2013) (explaining that governmental entities and employees are protected from liability except as provided by the GIAU); *id.* § 63G-7-102(c) (LexisNexis 2011) (defining "employee" to exclude independent contractors). He further asserts that UDOT did not present any evidence to demonstrate that the Doe defendants were employed by UDOT as part of its summary judgment motion. In the absence of any such evidence, Monarrez argues, the district court had to accept the factual allegations and reasonable inferences in his complaint as true. *See Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (explaining that in reviewing a grant of summary judgment, the court must view "the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party" (citation and internal quotation marks omitted)). And Monarrez contends, because the only reasonable inference to be drawn from his allegation that the Doe defendants were "construction companies and/or their employees" was that they were not governmental entities, the court could not enter summary judgment in favor of the Doe defendants because the provisions of the GIAU do not govern them.

¶43     UDOT argues that Monarrez's complaint does more than identify the Doe defendants as "construction companies and/or their employees" because the statement of facts section of the

complaint describes the construction workers as "*employed by* the Utah Department of Transportation (UDOT)" or if "not employed by UDOT," then within the "*control*[] and *direct*[*ion of*] . . . UDOT in such a way that UDOT should be vicariously liable for their actions." (Emphasis added.) Therefore, UDOT contends, Monarrez's failure to comply with the GIAU's Limitations Provision barred his claims against the Doe defendants as well.

¶44   Even if we accept Monarrez's contention that his complaint only identifies the Doe defendants as "construction companies and/or their employees" without linking them to the "construction workers" he identifies as "employed by . . . UDOT" or within its control, we cannot identify a claim against a non-governmental entity in his complaint. *See Canfield v. Layton City*, 2005 UT 60, ¶ 14, 122 P.3d 622 (explaining that although Utah has adopted a liberal notice pleading standard, the complaint must at least contain a "short and plain statement" that "give[s] the defendant fair notice of the nature and basis or grounds of the claim," the type of litigation involved, and the relief sought (citations and internal quotation marks omitted)). Monarrez does not allege any activities by the Doe defendants in his statement of facts. Rather, he refers generically to "the construction workers" as the ones responsible for "repairing the cracks in the road." He then follows that statement of fact with the allegation that the "construction workers were employed by . . . UDOT" or if "not employed by UDOT, their activities were controlled and directed by UDOT." A subsequent allegation suggests that "the slick road conditions resulted from something put on the road by the construction workers." But even if by its placement after the statements that the construction workers were employed by UDOT or subject to UDOT's control, Monarrez intended that this allegation be a reference to the Doe defendants, he does not assert that the Doe defendants had any duty to him separate from UDOT's for which they might be liable. For instance, in his negligence claim for relief, Monarrez states only that "UDOT has a duty to ensure highway safety." Similarly, in his negligent supervision and/or hiring claim for relief, Monarrez asserts that it was "the State of Utah's

negligence in hiring, supervising, or retaining the employees and/or contracted construction companies [that] proximately caused [his] injuries."

¶45    Thus, Monarrez's complaint, when read as a whole, does not separate out the Doe defendants from UDOT, a governmental entity that can only be sued after a claimant has complied with the requirements of the GIAU. Therefore, UDOT and the district court properly relied on Monarrez's own allegations in the complaint that suggested that all of the activities for which Monarrez was seeking relief were conducted by UDOT, its employees, or persons within its control. *See Baldwin v. Vantage Corp.*, 676 P.2d 413, 415 (Utah 1984) ("An admission of fact in a pleading is a judicial admission and is normally conclusive on the party making it."). *See generally Myers v. Trendwest Resorts, Inc.*, 100 Cal. Rptr. 3d 658, 666 (Ct. App. 2009) ("In moving for summary judgment, a party may rely on the doctrine of judicial admission by utilizing allegations in the opposing party's pleadings to eliminate triable issues of material fact."). Monarrez concedes that the "only 'pleadings'" in which the status of the Doe defendants' employment was discussed "were the complaint and the answer." *See* Utah R. Civ. P. 56(c) (explaining that summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact"). The district court's grant of summary judgment dismissing claims against the Doe defendants as falling under the umbrella of UDOT's liability was therefore correct.

CONCLUSION

¶46    We affirm the district court's interpretation of the Limitations Provision of the GIAU. Because we have concluded that the plain language of the Limitations Provision is unambiguous and that its retroactive application does not result

in substantial injustice, we reject Monarrez's contention that this interpretation should be applied prospectively only. We have also rejected Monarrez's estoppel claim because there were no inconsistent statements by UDOT upon which Monarrez could have reasonably relied. Accordingly, we uphold the grant of summary judgment. Summary judgment was appropriate as to the Doe defendants as well as UDOT because the pleadings do not demonstrate that Monarrez had stated any separate claims against the Doe defendants as non-governmental entities.

———————

VOROS, Judge (dissenting):

¶47     I respectfully dissent. Given the circumstances of this case and the state of the law until today, I would accord today's ruling only prospective effect.

¶48     Monarrez contends that, under the circumstances of this case, we should apply our interpretation of the Limitations Provision prospectively only. He asserts that the statutory question we decide today has never before been addressed by our courts and that given case law interpreting equivalent provisions in the APA and GRAMA, the language of the GIAU was not sufficiently clear to inform him that a complaint filed within one year of the actual denial but more than one year past the deemed-denied date would be barred as untimely.

¶49     "The general rule from time immemorial is that the ruling of a court is deemed to state the true nature of the law both retrospectively and prospectively." *Malan v. Lewis*, 693 P.2d 661, 676 (Utah 1984). Though apparently ancient, the rule is "general" and not inviolable: we have discretion to depart from it when retroactive application will result in "substantial injustice." *Id.* Our supreme court "has developed a sound theoretical framework for determining when a new rule of law in a civil case will be applied retroactively." *Kennecott Corp. v. State Tax Comm'n of Utah*, 862 P.2d 1348, 1352 (Utah 1993). Resolution of

the retroactivity question depends on "an appraisal of the relevant judicial policies." *Id.* Thus,

> we look to the impact retroactive application would have on those affected. When we conclude that there has been justifiable reliance on the prior state of the law or that the retroactive application of the new law may otherwise create an undue burden, the court may order that a decision apply only prospectively.

*Id.* (citation and internal quotation marks omitted). In my judgment, these policies favor prospective application of today's decision.

¶50    Until today, no Utah court had examined the Limitations Provision in the context of a twice-denied notice of claim. I consider the legal question a close call. On balance I agree with the majority that the text of the Limitations Provision specifies that the time for filing a complaint begins either when the notice of claim is affirmatively denied within the sixty-day period or when the notice of claim is deemed denied at the expiration of that period. However, the "prior state of the law" in this general area consisted of two supreme court cases interpreting similar provisions of the APA and GRAMA and reaching a contrary result. *See id.*; *see also Young v. Salt Lake County*, 2002 UT 70, ¶¶ 6–11, 52 P.3d 1240; *Harper Invs., Inc. v. Auditing Div., Utah State Tax Comm'n*, 868 P.2d 813, 185–16 (Utah 1994). Though we distinguish those cases based on statutory differences, reasonable minds might see those statutes and this one as more similar than different and so apply that case law. Furthermore, UDOT itself created the conundrum by sending the denial letter after the deemed-denied date. Although we agree with UDOT that its denial letter lacked legal significance, a reasonable person acquainted with the caselaw might have been justified in treating that letter as legally significant.

¶51    In sum, given the uncertainty resulting from the status of the law and UDOT's own acts, retroactive application of the Limitations Provision here would place an undue burden on Monarrez and result in substantial injustice. *See Kennecott Corp.*, 862 P.2d at 1352*; see also Hathaway v. State ex rel. Medical Research & Tech. Auth.*, 2002 OK 53, ¶ 15, 49 P.3d 740 (stating that where "the dispositive rule of law on the point in controversy was far from settled, fundamental fairness" required that the court's opinion "be accorded purely prospective effect").

¶52    I would accordingly reverse.

_____