2017 UT App 217

## THE UTAH COURT OF APPEALS

NICHOLAS J. LEGER,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Opinion
No. 20150723-CA
Filed November 24, 2017

Fourth District Court, Heber Department
The Honorable Derek P. Pullan
No. 130500137

Nicholas J. Leger, Appellant Pro Se

Sean D. Reyes and Mark C. Field, Attorneys
for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES GREGORY K. ORME and MICHELE M. CHRISTIANSEN
concurred.

MORTENSEN, Judge:

¶1 After Victim accused Nicholas J. Leger of beating, strangling, and raping her, Leger pled guilty to attempted aggravated sexual assault. Five years later, Leger petitioned for post-conviction relief, which the district court denied. Because we agree with the district court that the claims made in the petition were either time-barred or meritless, we affirm the court's denial of the petition.

BACKGROUND

¶2 In November of 2007, Victim and Leger walked into a grocery store to buy cigarettes. Victim's face was red, bruised,

and swollen; her lip was cut and swollen; and she had red marks on her throat. When Leger left Victim alone at the customer service counter, Victim passed a note, asking an employee to call the police. The employee complied and led Victim to a secure room, but not before Leger saw them and gave chase. Leger failed to reach Victim before she made it into the room, and he fled the store.

¶3 When the police arrived, Victim was crying, upset, and "nearly hyperventilating." She reported that before coming to the store, Leger had "beat, strangled, bit, spit on, screamed obscenities at, threatened to kill, sexually assaulted, and ultimately raped" her. Police found Leger hiding at a friend's house. He maintained that he had not raped Victim but had instead had "mad sex" with her. According to Leger, the marks on Victim's neck were the result of consensual strangulation during sex. Victim disputed this, and at a preliminary hearing she testified that her relationship with Leger never involved consensual violent sexual behavior.

¶4 As a result of a plea bargain, Leger pled guilty to attempted aggravated sexual abuse in August of 2008. Shortly thereafter, he filed a pro se motion to withdraw his plea, which motion he abandoned at the sentencing hearing in October of that same year. Leger was sentenced to a prison term of three years to life. Leger did not appeal.

¶5 In November of 2013, Leger filed a petition for post-conviction relief; he claimed that there was newly discovered evidence in his case, his plea was not voluntary, and his trial counsel's performance had been deficient. The State filed a motion for summary judgment on the grounds that Leger's claims were time-barred or, alternatively, failed as a matter of law. The district court agreed that all but one of Leger's claims were untimely—because Leger was aware or should have been aware of the facts underlying the claims within one year after his criminal case became final—and granted the State's motion in part. For the one remaining claim, a claim of ineffective

assistance of counsel, the district court denied the summary judgment motion and set an evidentiary hearing for the issue.

¶6    At the evidentiary hearing, the district court heard testimony from trial counsel and Leger. The focus of the hearing was Leger's claim that his trial counsel performed deficiently when he failed to retain a forensic nurse to review Victim's injuries. In Leger's view, a forensic nurse would have been able to show that Victim's injuries were caused "3 to 5 days earlier" than the events in question. Trial counsel testified that Leger never mentioned to him nor gave him reason to believe that Victim's injuries were old. And because Victim's injuries "were entirely consistent with the consensual sex that the defense intended to float at trial"—that is, a consensual strangulation defense—trial counsel determined that "hiring a forensic nurse to examine the injuries was not necessary." This defense was consistent with Leger's statements to police and trial counsel. The district court found that trial counsel performed effectively and that hiring a forensic nurse to testify that Victim's injuries were old "would have been inconsistent with and detrimental to Leger's defense."[1] Accordingly, the district court denied Leger's petition for post-conviction relief. Leger now appeals.


ISSUES AND STANDARDS OF REVIEW

¶7    Leger argues that the district court erroneously granted summary judgment in favor of the State on his petition for post-conviction relief. The district court's errors, he contends, are four-fold: (1) the district court erroneously concluded that

---

1. The district court also found that even if trial counsel performed deficiently, Leger had not proven that he was prejudiced. In the district court's view, the State's case was supported by strong evidence and the court "was not persuaded that but for counsel's [alleged] error in failing to retain a forensic nurse, Leger would have insisted on going to trial."

Leger's challenge to the validity of his guilty plea was time-barred because he was aware of the facts supporting the challenge at the time he entered his plea; (2) the district court erroneously concluded that Leger's claim that the State withheld exculpatory evidence was time-barred for the same reason;[2] (3) the district court erroneously concluded that Leger's ineffective-assistance claims were time-barred to the extent they relied on facts related to his challenge to the validity of his plea; and (4) the district court erroneously concluded that trial counsel provided effective assistance despite his failure to retain a forensic nurse.

¶8 For Leger's challenges to the district court's grant of summary judgment, we review the court's ruling for correctness; we will affirm if "the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Menzies v. State*, 2014 UT 40, ¶ 30, 344 P.3d 581 (citation and internal quotation marks omitted). And for Leger's challenge to the district court's denial of his petition, "we review the post-conviction court's legal conclusions for correctness and its factual findings for clear error." *Tillman v. State*, 2005 UT 56, ¶ 14, 128 P.3d 1123.

ANALYSIS

I. Summary Judgment

¶9 The district court granted summary judgment in favor of the State on all but one of Leger's claims. In doing so, the court determined that at the time he entered his guilty plea, Leger "was aware, or through the exercise of reasonable diligence

---

2. Leger actually raises two separate issues with the court's conclusions about the potentially exculpatory evidence. But because the issues are so closely related, we consider them together.

should have been aware" of the evidentiary facts supporting the claims on which the court entered summary judgment. *See* Utah Code Ann. § 78B-9-107(2)(e) (LexisNexis Supp. 2017) (providing that a cause of action for post-conviction relief accrues when a petitioner "knew or should have known, in the exercise of reasonable diligence, of evidentiary facts on which the petition is based"). Accordingly, the court determined that those claims were time-barred because they were not brought "within one year after the cause of action" accrued—in this case within one year from "the last day for filing an appeal from the entry of the final judgment of conviction." *See id.* § 78B-9-107(1), (2)(a).[3]

¶10    On appeal, Leger's challenges to the grant of summary judgment fall into three categories: the voluntariness of his guilty plea, the withholding of potentially exculpatory evidence, and ineffective assistance of trial counsel.

A.    Voluntariness

¶11    In his petition for post-conviction relief, Leger alleged that his plea was not voluntary. Specifically, he argued that he was "coerced into pleading guilty and then coerced into withdrawing his September 15, 2008 motion to withdraw guilty plea." The

---

3. While the district court mirrored the language from subsection (2)(e) in its recitation of undisputed facts, in its conclusions of law, it calculated the time for bringing Leger's post-conviction petition under both that subsection and subsection (2)(a). *See* Utah Code Ann. § 78B-9-107(2)(a), (e) (LexisNexis Supp. 2017). Because the court determined that Leger "was aware at the time he pleaded guilty of the evidentiary facts in support of his challenge," the "latest of" the possible dates for accrual would be the date under subsection (2)(a). *See id.* § 78B-9-107(2). The crux of Leger's arguments on appeal is that he did not know the evidentiary facts supporting his challenges until much later, and the time for bringing his petition should be calculated from that later date under subsection (2)(e).

petition did not explain exactly how Leger was so coerced, but, as the State points out, "Leger necessarily knew at the time he pleaded guilty whether he personally felt pressured into accepting the plea offer." Additionally, "Leger was present at the change-of-plea hearing, he responded to questioning from the trial court, and he acknowledged that he read and understood the contents of the plea affidavit." And the district court, in granting summary judgment on this point, seemed to acknowledge this. The district court listed as an undisputed fact that "Leger was aware, or through the exercise of reasonable diligence should have been aware, within a year from the time his criminal case became final of the evidentiary facts in support of his challenge to the validity of his guilty plea."

¶12 Leger claims that the "evidentiary facts" referenced by the district court involved "defense counsel's consideration of retaining a forensic nurse to examine the evidence of the victim's injuries for possible exculpatory or impeachment evidence." This is inaccurate. Those facts addressed one of Leger's claims of ineffective assistance of counsel, and as to those facts, the district court denied the State's motion for summary judgment and deemed it necessary to hold an evidentiary hearing because "Leger was not aware . . . that his trial counsel did not hire a forensic expert to examine the victim's injuries" until May of 2013. Discussion of trial counsel's failure to retain a forensic nurse is therefore misplaced in considering whether the district court properly granted summary judgment on Leger's claim that he was coerced into pleading guilty.

¶13 In addressing the question of voluntariness, Leger identifies only facts related to the district court's grant of summary judgment. Those facts are entirely unrelated to whether Leger's plea was voluntarily entered, and thus he has failed to carry his burden of persuasion on appeal. He has not demonstrated that there existed a dispute as to the material facts surrounding his claim that his plea was involuntary, nor has he shown that the State was not entitled to judgment as a matter of

law. We therefore affirm the district court's grant of summary judgment on this claim.

B.     Withheld Evidence

¶14    Leger also sought post-conviction relief on the ground that the State had failed to disclose exculpatory evidence. He argued, "In April of 2007, approximately 7 months before this alleged crime[,] defendant told police, who documented the exchange, that [Victim] liked to be choked to achieve sexual satisfaction. This information was not disclosed to the defense. This information corroborated [the] claim by defendant that [Victim] enjoyed being choked." The police report in question stemmed from a separate domestic violence call, during which Victim accused Leger of putting his hands around her throat. Leger denied the accusation, but later, as the police were driving him to a friend's house, Leger volunteered that he might have held Victim by the throat because she "liked to be strangled during sex." The district court concluded that "Leger was aware, or through the exercise of reasonable diligence should have been aware, within a year from the time his criminal case became final that a police report may have existed documenting his prior claim that the victim liked to be [choked] during sexual intercourse."

¶15    Leger argues that the district court's conclusion was in error because:

> First, the police report was from an encounter Leger had with the police in April 2007, which was nine months before the January 2008 preliminary hearing. Even if Leger did remember he had a discussion with the police in April 2007, it is entirely unlikely that Leger would have remembered any of the details of the content in the conversation Leger had with the police nine

months after the fact as it related to the victim's [preliminary hearing testimony].[4] . . .

> Certainly, if Leger had remembered this April 2007 conversation with the police, then he would have informed his defense counsel, who would in turn have requested in discovery from the Prosecution a copy of all the police reports where the police had had any encounter with Leger.

Thus, Leger claims, this fact was "clearly disputable."

¶16    The State counters that because "the police report was based on Leger's own statement, the post-conviction court reasonably concluded that Leger was, or should have been, aware when he pleaded guilty that in April 2007 he had attempted to explain away [Victim's] prior strangulation allegations to police by saying that she liked to be strangled." We agree.

---

4. The preliminary hearing testimony Leger references is the following exchange: Defense counsel asked Victim, "Do you remember telling the police during that interview that sometimes during sexual intercourse prior to that day, there would be choking involved between you and Mr. Leger?" Victim answered, "No. I stated to the officer that there may have been a time where he had—he had maybe had his hands on my throat, but never to where I was coughing . . . or passing out, or to that extreme, no." Leger does not explain how this testimony affected his ability to remember that he had recently spoken to police about Victim's alleged penchant for sexual strangulation. If anything, it seems that hearing Victim's denial of this conversation with police would have reminded Leger of his prior conversation.

¶17 "[T]he 'trigger' under section 78B-9-107(2)(e) is actual or imputed discovery of the evidentiary facts supporting the petition." *Brown v. State*, 2015 UT App 254, ¶ 10, 361 P.3d 124 (citation omitted). There is perhaps no easier way for a petitioner to discover a certain fact than by experiencing it firsthand. For instance, in *Sanchez v. State*, 2010 UT App 247U (per curiam), the post-conviction petitioner argued that his trial counsel had been ineffective for incorrectly advising him that a guilty plea would carry no immigration consequences. *Id.* para. 5. He further argued that he did not know this advice was incorrect until he applied for legal status fifteen years later. *Id.* But we pointed out that immediately following his plea, the petitioner had been deported. *Id.* Because the petitioner personally experienced deportation, he necessarily had to know that his plea carried immigration consequences—and, by extension, that his trial counsel had advised him incorrectly—at the time he was deported. *See id.* para. 7; *see also Mikkelson v. Quail Valley Realty*, 641 P.2d 124, 125–26 (Utah 1982) (explaining that a plaintiff who personally inspected property knew or should have known the correct square footage of the property); *Benson v. Peace Officer Standards & Training Council*, 2011 UT App 220, ¶ 15, 261 P.3d 643 (noting that a police officer of twenty years who was employed as an investigator during a certain two-year period necessarily knew that he did not work as a reserve officer during that same time period).

¶18 Given the common-sense understanding that a petitioner knows or should know a fact when he personally experiences it, we fail to see how Leger could not have known that he once spoke with police about the very topic he intended to use as a defense to the charges against him. We agree with the State's reasoning that, because "Leger does not explain why it was unreasonable for the court to infer from the fact that the police report was based on Leger's own statements that he would remember what he told police," he fails to show that the district court erred.

¶19   To the extent Leger's argument is that he did not know a report had been created based on his statements, he has similarly failed to demonstrate error by the district court. While he does hypothesize a rather convoluted path he would have needed to travel to try and procure the report, engaging in what he claims "would amount to a 'fishing expedition,'" he summarily concludes that the hypothetical path would satisfy the statute's call for the exercise of reasonable diligence, *see* Utah Code Ann. § 78B-9-107(2)(e) (LexisNexis Supp. 2017), and would nevertheless leave him unable to "have obtained a copy of the April 2007 police report to learn it documented the exculpatory and impeachment evidence that the victim liked being choked during sexual intercourse prior to the November 7, 2007 incident." This is quite a leap. Leger essentially argues that although the police were responding to claims of domestic violence, including choking, he cannot be expected to remember the interaction. But even if he did remember the interaction, he cannot be expected to know that the police would document it. And even if he knew the police would document the interaction, he cannot be expected to know that the report would include an accurate account of the statements he made to police. This is illogical. Leger knew or should have known that he spoke with police in April 2007. Accordingly, he knew or should have known that an April 2007 police report likely existed. The district court concluded precisely that, and in that conclusion we see no error.[5]

---

5. For the first time on appeal, Leger frames this challenge about the police report as a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and asks that we engage in a *Brady* analysis. Aside from a brief suggestion that the prosecutor should have provided Leger with this report, he never argued below that the failure to do so amounted to a *Brady* violation. In fact, the only mention of the State's role came in arguing that his trial counsel had been ineffective for not requesting exculpatory evidence from the prosecutor. "An issue is preserved for appeal only if it was

(continued…)

C.      Ineffective Assistance

¶20     The petition for post-conviction relief included several claims of ineffective assistance of counsel. The district court granted summary judgment on some of those claims, "to the extent they rely on the evidentiary facts related to" the claims discussed above. Leger argues that the district court erred in granting summary judgment on that basis. He rests his argument on his belief that he demonstrated error regarding the voluntariness of his guilty plea and the State purportedly withholding exculpatory evidence.[6] But because we already concluded that Leger did not demonstrate error, we cannot agree that the district court was wrong in granting summary judgment on claims which relied on facts that were known or should have been known by Leger at the time he entered his guilty plea. Those claims were time-barred.

## II. Denial of Remaining Claim

¶21     Finally, Leger claims that the district court erred when it denied his petition for post-conviction relief after holding an evidentiary hearing on the one remaining claim—that trial

---

(…continued)

presented to the trial court in such a way that the trial court had an opportunity to rule on it." *State v. Martinez*, 2015 UT App 193, ¶ 27, 357 P.3d 27. Because Leger did not give the district court an opportunity to rule on a claim of a *Brady* violation, we will not consider that claim made now for the first time on appeal.

6. Again Leger misreads the district court's order and argues that there were disputed facts regarding trial counsel's decision not to retain a forensic nurse. As we previously discussed, the district court did not grant summary judgment on this issue and instead held an evidentiary hearing. *See supra* ¶ 12. We therefore do not consider the forensic-nurse question in this section.

counsel had provided ineffective assistance when he failed to retain a forensic nurse to review Victim's injuries.

¶22   To succeed on a claim for ineffective assistance of counsel, Leger was required to meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "First, the defendant must show that counsel's performance was deficient." *Id.* at 687. Leger claims that trial counsel was deficient for failing to conduct a thorough investigation into his case. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* Leger claims that he was prejudiced by pleading guilty when he otherwise would not have. The district court found that Leger had failed to sufficiently prove either prong.

¶23   Leger contends that his trial counsel performed deficiently by not retaining a forensic nurse. "[C]ounsel had contacted a forensic nurse to determine if her credentials met the criteria as an expert witness to examine the evidence of the victim's injuries for possible exculpatory evidence for Leger's case, and determined they did." Furthermore, defense counsel "had funding approved for the forensic nurse." But counsel nevertheless "did not retain the forensic nurse to examine the evidence of the victim's injuries." If trial counsel had retained a forensic nurse, Leger argues, the nurse would have been able to testify that Victim's injuries "were too old to have been inflicted by him on the night [Victim] said she was raped."

¶24   Assuming a forensic nurse would have so testified and that the testimony were believed by a jury or judge at trial, this testimony would have undermined Leger's defense that the marks on Victim's neck were the result of "mad sex" they had had earlier that day, before the police were called. It would have undermined Leger's defense that Victim consented to being choked during that sexual encounter. And even if we were to assume that Leger would have changed course, knowing that such testimony would be presented, and that he would not have pursued a defense of consensual sex, such a changed course also would have undermined Leger's case. He had already made

statements to the police explaining away Victim's marks. If, at trial, Leger suddenly pursued a defense resting on the age of Victim's injuries and, presumably, a lack of sex—consensual or otherwise—between Victim and Leger on the day in question, the State would have undoubtedly used Leger's prior inconsistent statements against him.

¶25 At the evidentiary hearing before the district court, trial counsel testified that he believed the best defense to the charges Leger faced was "that the injuries were the result of consensual—albeit rough—sexual activity." We cannot disagree. This defense was consistent with the statements Leger had made from the start. It was consistent with Victim's injuries. And we are thus unable to conclude that the decision to pursue this defense, rather than other potential defenses involving the hiring of a forensic nurse, lacked a "conceivable tactical basis." *See State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162 (citation and internal quotation marks omitted). We therefore agree with the district court that trial counsel did not perform deficiently.[7]

## CONCLUSION

¶26 We hold that the district court did not err either by partially granting the State's motion for summary judgment or by denying Leger's remaining claim for post-conviction relief. We accordingly affirm.

———————

7. "Because we determine trial counsel acted objectively reasonably, we need not reach *Strickland*'s requirement of prejudice." *See State v. Alfatlawi*, 2006 UT App 511, ¶ 19, 153 P.3d 804.